UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDDIE ORTIZ,<br><br>       Petitioner,<br><br>   vs.<br><br>WILLIAM CONNOLLY,[1] Superintendent,<br>Fishkill Correctional Facility,<br><br>       Respondent. | No. 9:07-cv-00216-JKS<br><br>MEMORANDUM DECISION |

  Petitioner Eddie Ortiz, a state prisoner appearing *pro se*, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Ortiz is currently in the custody of the New York Department of Correctional Services, incarcerated in the Fishkill Correctional Facility.  Respondent has answered the petition, and Ortiz filed his traverse.

           I.  BACKGROUND/PRIOR PROCEEDINGS

  In September 2001 a Cayuga County Court jury returned a verdict of guilty on a charge of Aggravated Harassment of an Employee by an Inmate (N.Y. Pen. Law § 240.32).  On a post-conviction motion, the trial court vacated the conviction, finding that the verdict was against the weight of the evidence.  The People appealed to the Appellate Division, Fourth Department, which reversed the trial court and reinstated the verdict, and the New York Court of Appeals denied leave to appeal.[2]  On remand, Ortiz was sentenced an indeterminate term of two and one-half to five years, to be served consecutive to his current sentence.  Ortiz timely appealed to the

---

  [1] William Connolly, Superintendent, Fishkill Correctional Facility, is substituted for Robert Ercole, Superintendent Green Haven Correctional Facility.  Fed. R. Civ. P. 25(d).

  [2] *People v. Ortiz*, 758 N.Y.S.2d 566 (N.Y. App. Div), *lv. denied*, 795 N.E.2d 48 (N.Y. 2003) (*Ortiz I*).

Appellate Division, Fourth Department, which affirmed his conviction in a reasoned written opinion and the New York Court of Appeals denied leave to appeal on June 27, 2005.[3]

On August 17, 2006, Ortiz filed a motion for a writ of error coram nobis in the Appellate Division, Fourth Department, which summarily denied his motion without opinion or citation to authority, and the New York Court of Appeals denied leave to appeal on January 25, 2007.[4]

Ortiz timely filed his petition for relief in this Court on February 22, 2007, and his amended petition on April 2, 2007.

## II.  GROUNDS RAISED/DEFENSES

In his petition before this Court Ortiz raises four grounds:  (1) and (2) both claim ineffective assistance of appellate counsel; (3) insufficiency of the evidence to support the conviction; and (4) in denying his application for a writ of error *coram nobis* without ordering a response and holding a hearing violated New York law.

Respondent does not assert any affirmative defenses.[5]

## III.  STANDARD OF REVIEW

Because Ortiz filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Consequently, this Court cannot grant relief unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the

---

[3] *People v. Ortiz*, 791 N.Y.S.2d 751 (N.Y. App. Div.), *lv. denied*, 834 N.E.2d 1271 (N.Y. 2005) (*Ortiz II*).

[4] *People v. Ortiz*, 823 N.Y.S.2d 116 (N.Y. App. Div. 2006), *lv. denied*, 862 N.E.2d 799 (N.Y. 2007) (*Ortiz III*).

[5] *See* Rules—Section 2254 Cases, Rule 5(b).

[6] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

Supreme Court] as of the time of the relevant state-court decision."[7]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable," "not just incorrect."[9]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[10]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[11]  Ortiz "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[12]

In applying this standard, this Court reviews the last reasoned decision by the state court.[13]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[14]  If a federal claim has not been adjudicated on the merits, AEDPA deference is not required.[15]  In that situation, conclusions of law and mixed questions of fact and conclusions of law are reviewed *de novo*.[16]  A state court

---

[7] *Williams*, 529 U.S. at 412.

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[10] *Schriro v. Landrigan*, 550 U.S. 465, ___, 127 S.Ct. 1933, 1939 (2007).

[11] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[12] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[13] *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[14] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[15] *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).

[16] *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005).

decision is conclusively presumed to have been on the merits when the state court disposes of the claim on other than procedural grounds, even where it fails to provide any reasoning for the disposition.[17]  Where there is no reasoned decision of the state court addressing the ground or grounds raised by Ortiz on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it.[18]

To the extent that Ortiz raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[19]  A federal court must accept that state courts correctly applied state laws.[20]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[21]  A federal court may not issue a habeas writ based upon a perceived error of state law unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[22]

## IV.  DISCUSSION

<u>Ground 1:  Ineffective Appellate Counsel</u>.

<u>Ground 2:  Ineffective Appellate Counsel</u>.

Because both the first and second ground raise the same legal issue and a common set of facts, the Court finds it appropriate to discuss the two grounds concurrently.[23]  Ortiz raised these

---

[17] *See Jimenez v. Walker*, 458 F.3d 130, 145–46 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 976 (2007) (Mem).

[18] *See Spears v. Greiner*, 459 F.3d 200, 203-04 (2d Cir. 2006).

[19] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[20] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[21] *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

[22] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[23] Ortiz contends that the Appellate Division did not decide the *coram nobis* application on the merits and, therefore, that decision is not entitled to AEDPA deference.  The Court disagrees.  Even
(continued...)

grounds in his motion for a writ of error *coram nobis*, which was summarily denied by the Appellate Division without a reasoned decision and without requiring a response by the People.[24]

Ortiz argues that appellate counsel's performance was deficient in failing to raise and argue ineffective assistance of trial counsel, that the trial court improperly denied Oriz's request for a continuance, and, although the issue was presented to the Appellate Division, counsel incorrectly argued the issue that the sentence imposed was harsh and excessive.

Under *Strickland v. Washington*, to demonstrate ineffective assistance of counsel, Ortiz must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[25] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[26] Ortiz must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[27] *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions. Indeed, the Supreme Court admonished in *Strickland*:[28]

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense

---

[23](...continued)
though the Appellate Division did not provide any reasoning for its denial, it was nonetheless decided on the merits. *See* Note 17 and accompanying text.

[24] There being no reasoned state court decision addressing this issue, this Court must determine it *de novo* on the record before it. *See Spears*, 459 F.2d at 203–04. Ortiz argues, without citation to authority, that because the People did not oppose his motion, the People have waived any objection to granting relief by this Court. That argument is rejected as being meritless. Ortiz has cited no New York authority for his position and independent research by the Court has found no such authority. Indeed, New York courts routinely and frequently deny applications for a writ of error *coram nobis* on the basis of the moving papers alone without requiring a response or holding a hearing.

[25] 466 U.S. 668, 687 (1984).

[26] *Id.*

[27] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[28] 466 U.S. at 689 (internal citations and quotation marks omitted).

after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[29]  "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[30]

The standard applied in New York in analyzing ineffective assistance of counsel claims is, as set forth in *People v. Benevento*, a flexible one, "so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met."[31]  The core of the New York test is whether the defendant received "meaningful representation."[32]  As in *Strickland*, "counsel's efforts should not be second guessed with the clarity of hindsight to determine how the defense might have been more effective."[33]

---

[29] *See Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Apracio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims).

[30] *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000), quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

[31] 697 N.E.2d 584, 587 (N.Y. 1998) (internal alterations, quotation marks and citation omitted).

[32] *Id*.

[33] *Id*.

A. *Ineffective Assistance of Trial Counsel*.

Ortiz contends that at trial counsel was deficient in that: (1) counsel failed to object to the introduction of prejudicial evidence; (2) counsel failed to introduce into evidence the correctional officer's clothing and certain laboratory evidence; (3) counsel failed to object to the continued shackling of Ortiz's legs during trial; (4) counsel's objection to the constitutionality of N.Y. Penal Law § 240.32 was deficient; and (5) counsel failed to object to the conviction on the basis of insufficiency of the evidence.[34]

I. Objection to Introduction of Prejudicial Evidence.

The prejudicial evidence of which Ortiz complains was: (1) testimony of the correctional officer that the liquid substance thrown at him smelled like urine, and (2) evidence that a substance found in a puddle tested positive for urine.

Counsel did, in fact, object to the introduction of the testimony of the correctional officer, which objection was overruled.

Q.   What side of your head were you hit on?

A.   The left.

Q.   Now could you describe this liquid substance?

A.   It smelled of urine.

MR. BATES:  Objection, your Honor.

THE COURT:      What was the question?

MR. VALDINA:    Could you describe this liquid substance.

THE COURT:      Overruled.

A.   It smelled of urine.

Ortiz argues that counsel should have objected on the grounds of lack of foundation. First, what is not apparent from the record is whether the trial court in this case would entertain "speaking objections," that is where, absent a request from the judge, an objection states the grounds for the objection. Second, as noted in the discussion below on the admissibility of the

---

[34] The record also shows that counsel did, in fact, successfully move to set aside the verdict, which was reversed on the first appeal. Thus, this argument is factually inaccurate.

evidence, under New York law it is more likely than not that the objection on that basis would have been overruled. Ortiz further argues that this "error" was compounded by similar subsequent lay testimony (smelled like urine) to which no objection was made. Having been overruled on the subject before, it cannot be said that trial counsel was deficient in failing to make the same objection.

The second area of prejudicial evidence identified by Ortiz concerned the evidence that a substance found seven feet away from the cell tested positive for urine. Ortiz argues that because the prosecution did not prove that the substance was part of the substance thrown, had not been contaminated, or placed there by other means, counsel should have objected to the introduction for lack of foundation. This argument is devoid of merit. While the Court agrees that in proving his entire case, the prosecution was required to introduce evidence from which the ultimate fact could logically be inferred, it was unnecessary to the admissibility of the test results for the substance. The test of the substance was merely a link in the chain of evidence. In short, counsel had no legitimate basis upon which to object to introduction of the evidence. Counsel did, however, as discussed further below, strenuously argue before the jury the gaps and deficiencies in the chain of the evidence.

II.  Failure to Introduce Evidence.

Ortiz claims that trial counsel was deficient in failing to introduce into evidence certain "negative" laboratory test results of urine testing done on the clothing worn by the correctional officer or the clothing itself. Contrary to Ortiz's contentions, no evidence of positive results of the presence of urine, other than the one sample taken referred to above, was introduced. Evidence was, however, introduced that the laboratory tests of the clothing worn by the correctional officer did not test positive for urine. Therefore, the results of the "negative" tests, if not the tests themselves, were presented to the jury. How the introduction of the clothing worn by the correctional officer would have assisted Ortiz is unexplained and is not readily apparent to the Court. As Respondent notes, the clothing may still have retained the odor of urine, which would have hurt, not helped, Ortiz. The omitted evidence was either cumulative (the tests) or of questionable, if any, probative value beneficial to Ortiz (the clothing).

A review of the transcript reveals that trial counsel pointed out in both his opening statement and argued in his summation the deficiencies in the prosecution's evidence. Specifically, he pointed to the lack of any evidence of urine on the correctional officer, the fact the styrofoam cup allegedly used was never found and, therefore, tested for the presence of urine, that the uniform and T-shirt worn by the correctional officer tested negative for urine, that only one of four swabs was tested for the presence of urine, the one that was seven feet from the cell door, and that nothing in the test showed where the urine came from or when it got there. Ortiz argues that this "ineffective" summation compounded the evidentiary errors. While the summation was "ineffective" in the sense that the jury disagreed with counsel's assessment of the evidence, it certainly does not support a finding of ineffective counsel. In fact, Ortiz does not even hint at what other argument trial counsel should have made.

### III. Shackling.

Immediately after the trial court granted Ortiz's motion to relieve counsel and permit him to proceed *pro se* the following occurred.

MR. BATES: I have a couple of things, Judge.

THE COURT: Well he's --

MR. BATES: No, he's shackled.

THE COURT: I'm going to order that his handcuffs be removed from him during the course of this trial, but the leg irons are to remain.

\* \* \* \*

THE COURT: Your request is denied. All right, you may remove the handcuffs.

DEPUTY: Your Honor, is it on the minutes?

THE COURT: This is against your rules?

DEPUTY: Yes. One of us needs to call the facility.

THE COURT: Yes, you may call the facility.

THE DEFENDANT: The handcuffs stay on?

THE COURT: No, the leg irons stay on. Wait a minute. Are the leg irons on?

DEPUTY: Yes, sir.

>   THE COURT: All right, the handcuffs are to be removed.

There is no indication in the record the issue of restraints or leg irons came before the trial court at anytime. In particular, there is nothing in the record that addresses the necessity for restraining Ortiz.

First, the Court notes that the issue of restraints came during the period that Ortiz was appearing *pro se*. Once he elected to proceed *pro se*, Ortiz cannot later claim that he received ineffective assistance of counsel.[35] Thus, to the extent that Ortiz claims ineffective assistance of counsel with respect to the retention of the leg irons, it is totally devoid of merit.

Even if the Court were to reach the issue on the merits, Ortiz would not necessarily prevail. The Supreme Court has observed that shackling, although an "inherently prejudicial practice . . . [is] permitted . . . where justified by an essential state interest specific to each trial."[36] "The law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need."[37] The Court then held:[38]

> Thus, where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The State must prove beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.

Review of this issue by the Court is hampered by the lack of a record upon which to base its review. Nothing in the record, other than an oblique reference to the "rules" by the trial judge directed to the deputies, indicates the reasoning for compelling Ortiz to continue to wear the leg irons during the trial. But, perhaps more telling, is there is nothing in the record or the petition before this Court that the leg irons were visible to the jury. Given that this Court will not

---

[35] *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975).

[36] *Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986).

[37] *Deck v. Missouri*, 544 U.S. 622, 626 (2005).

[38] *Id.*, 544 U.S. at 635 (citing *Chapman v. California*, 386 U.S. 18 (1987)).

presume error on the part of the state courts,[39] and that Ortiz has the burden of proof by a preponderance of the evidence that a constitutional error occurred,[40] it cannot find that even had counsel objected it would have been sustained (a reasonable basis for the shackling existed) or that the fact Ortiz was shackled deprived him of a fair trial.

### IV.  Constitutionality of N.Y. Penal Law § 240.32.

Ortiz further complains that although trial counsel challenged the constitutionality of N.Y. Penal Law § 240.32, his challenge was ineffective and deficient.  Ortiz argues that counsel should have presented the issue in constitutional terms, *i.e.*, that § 240.32 violated due process and the equal protection clauses in that it was duplicitous.[41]  Under New York law, an indictment is duplicitous and, therefore, defective, when a count charges more than a single crime.[42]  In this case, the New York Legislature has deemed it appropriate to include within the same crime both an attempt to commit an act and the commission of the act.  Ortiz cites no authority for the proposition that, unlike a count in an indictment, a statute making both an attempt and actual commission of a crime a single crime violates due process or equal protection, and independent research by the Court has not revealed any such authority.  The indictment itself, although it recites § 240.32 verbatim, specifically charges Ortiz "with intent to harass, annoy, threaten or alarm 'T.H.,' a person in a facility whom the defendant knew or reasonably should have known to be a Correction Officer, did throw urine on 'T.H.'"  Thus, the single-count indictment itself charges Ortiz only with the completed offense, not both an attempt and a completed offense.

---

[39] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[40] *Hawkins v. Costello, supra*.

[41] As relevant to these proceedings, § 240.32 provides:
An inmate or respondent is guilty of aggravated harassment of an employee by an inmate when, with intent to harass, annoy, threaten or alarm a person in a facility whom he knows or reasonably should know to be an employee of such facility or of the division of parole or the office of mental health, or a probation department, bureau or unit or a police officer, he causes or attempts to cause such employee to come into contact with blood, seminal fluid, urine or feces, by throwing, tossing or expelling such fluid or material.

[42] *See* N.Y. Crim. Proc. Law § 200.30[1]; *People v. Wells*, 850 N.E.2d 637, 641 (N.Y. 2006).

Ortiz has failed to show that this argument had sufficient merit that the failure of trial counsel to argue it constituted ineffective counsel.

Ortiz has not established that trial counsel was ineffective by any reasonable objective standard. Ortiz has failed to show that trial counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*, or that he did not receive meaningful representation as required by *Benevento*.

There is simply no reasonable probability that the Appellate Division, applying *Benevento*, would have decided the issue in favor of Ortiz. Consequently, Ortiz has failed to establish that appellate counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, or that his defense was prejudiced, as required by *Strickland-Hill*. In particular, Ortiz has failed to establish prejudice, *i.e.*, that the result would have been different.

B. *Denial of a Continuance*.

Ortiz argues that appellate counsel should have raised as an issue the denial of a continuance as grounds for reversal. It is highly unlikely that the Appellate Division would have held this to be an abuse of the trial court's discretion. As the New York Court of Appeals noted in an analogous context:[43]

> Although a defendant has the constitutionally guaranteed right to be defended by counsel of his own choosing, this right is qualified in the sense that a defendant may not employ such right as a means to delay judicial proceedings. The efficient administration of the criminal justice system is a critical concern to society as a whole, and unnecessary adjournments for the purpose of permitting a defendant to retain different counsel will disrupt court dockets, interfere with the right of other criminal defendants to a speedy trial, and inconvenience witnesses, jurors and opposing counsel. While it has been stated that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality" Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921), it is equally true that the constitutional right to defend by counsel of one's own choosing does not bestow upon a criminal defendant the absolute right to demand that his trial be delayed while he selects

---

[43] *People v. Arroyave*, 401 N.E.2d 393, 397 (N.Y. 1980).

another attorney to represent him at trial. (See, e.g., United States v. Bragan, 4 Cir., 499 F.2d 1376, 1379, supra.) Whether a continuance should be granted is largely within the discretion of the Trial Judge (see, e.g., People v. Crown, 51 A.D.2d 588, 378 N.Y.S.2d 775; People v. Gordon, 262 App.Div. 534, 30 N.Y.S.2d 625, supra ; cf. People v. Singleton, 41 N.Y.2d 402, 405, 393 N.Y.S.2d 353, 356, 361 N.E.2d 1003, 1005), and the question whether a defendant has been denied his right to retain counsel of his own choosing can only be answered by examining the particular facts of each case.

It can be said, however, that absent exigent or compelling circumstances, a court may, in the exercise of its discretion, deny a defendant's request to substitute counsel made on the eve of or during trial if the defendant has been accorded a reasonable opportunity to retain counsel of his own choosing before that time. (See People v. Crown, 51 A.D.2d 588, 378 N.Y.S.2d 775, supra; People v. Reynolds, 39 A.D.2d 812, 332 N.Y.S.2d 490; cf. People v. Medina, 44 N.Y.2d 199, 404 N.Y.S.2d 588, 375 N.E.2d 768.) At this point, public policy considerations against delay become even stronger, and it is incumbent upon the defendant to demonstrate that the requested adjournment has been necessitated by forces beyond his control and is not simply a dilatory tactic.

As noted above, Ortiz was initially assigned counsel to represent him. Two months before trial, at the request of Ortiz, assigned counsel was relieved and substitute counsel appointed. On the day that trial began Ortiz requested that counsel be relieved and he be permitted to represent himself. Ortiz in both instances asked to change counsel on the same basis—he simply did not agree with their trial strategy and the way they were presenting the case. On the same day he requested counsel be relieved and he be permitted to represent himself, at the conclusion of jury selection, Ortiz changed his mind and requested that counsel be reappointed. The trial court granted this request and reappointed counsel to represent him during trial. Other than his conclusory statement that, because he was not granted a continuance, Ortiz felt he was unprepared to try the case himself and was therefore compelled to request the reappointment of counsel, he claims no prejudice from the denial of his motion for a continuance.[44] In his *coram nobis* application to the Appellate Division, Ortiz made no showing that it was likely he would have prevailed on this issue had it been raised on appeal; nor does he make any such showing

---

[44] The Court notes that the fact Ortiz withdrew his request to proceed *pro se* and that counsel was reappointed is not mentioned in his petition or his traverse before this Court. It is, however, contained in his *coram nobis* application filed in the Appellate Division.

before this Court. In particular, he points to no evidence he had to review or how he was prejudiced by the denial of the continuance.[45] In short, Ortiz has failed before either the Appellate Division or this Court to even remotely address the critical issue, to wit: that the denial of a continuance was an abuse of discretion.

C. *Harsh and Excessive Punishment*.

Ortiz argues that appellate counsel in raising the issue that the sentence was unduly harsh and excessive failed to present the facts and circumstances of his case that warranted a finding that the sentence imposed was harsh and excessive. In particular, Ortiz complains about the imposition of a $5,000.00 fine. What Ortiz leaves unanswered is just what those facts and circumstances were. Ortiz was already serving a sentence of 20 years to life for second-degree murder. He was also in the disciplinary unit for violation of prison rules and regulations. It is unimaginable that these factors would have assisted Ortiz.

This Court cannot say that the decision of the Appellate Division in denying the application for a writ of error *coram nobis* was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[46] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Ortiz's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Ortiz has failed to establish that appellate counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that defendant's defense was prejudiced, as required by *Strickland-Hill*. In particular, Petitioner has failed to overcome the strong

---

[45] The only evidence he would not have had the opportunity to review previously would have been the evidence produced on the day of trail under *Rosario v. New York*, 173 N.E.2d 881 (N.Y. 1961), which is not required to be disclosed until the day of trial in any event. Ortiz would not have received the material earlier even if he had been proceeding *pro se* from an earlier time.

[46] 28 U.S.C. § 2254(d).

presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[47]

Ortiz is not entitled to relief under his first and second grounds.

Ground 3:  Insufficiency of the Evidence.

Oriz argues that the evidence was insufficient to support the verdict.  In *Ortiz I*,[48] the Appellate Division in reversing the trial court's setting aside of the verdict held:

> The jury found defendant guilty of aggravated harassment of an employee by an inmate (Penal Law former § 240.32), and the evidence that the liquid that struck the correction officer smelled of urine, together with the other evidence submitted by the People, is legally sufficient to support a conviction of that crime. Consequently, we reverse the order, deny the motion, reinstate the verdict and remit the matter to Cayuga County Court for sentencing.

In the *Ortiz II*,[49] the Appellate Division, citing *People v. Bleakley*,[50] held:  "The verdict is not against the weight of the evidence."  Under New York law, the Appellate Division employs two related standards of review—legal sufficiency and weight of the evidence.  Although related, each requires a discrete analysis.  Under the sufficiency of the evidence standard, the Appellate Division must determine whether there is a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury on the basis of evidence at trial.  Under the weight of the evidence standard, the court must examine the evidence further.  If based upon all the credible evidence a different finding would not have been unreasonable, the Appellate Division, giving deference to the jury on credibility, must weigh the relative probative force of the conflicting testimony and the relative strength of conflicting inferences that may be

---

[47] The Court also notes that the court in which the *coram nobis* application was the same court that would have heard the matters on appeal.  The denial of the *coram nobis* application is at least indicative that the Appellate Division was of the opinion that, if presented to it on appeal, it would not have ruled favorably to Ortiz.

[48] 758 N.Y.S.2d 566 (N.Y. App. Div), *lv. denied*, 795 N.E.2d 48 (N.Y. 2003).

[49] 791 N.Y.S.2d 751 (N.Y. App. Div.), *lv. denied*, 834 N.E.2d 1271 (N.Y. 2005).

[50] 508 N.E.2d 672 (1987).

drawn from the testimony.[51] In determining the weight of the evidence, the Appellate Division determines credibility issues and must assess the evidence in light of the elements of the crime as charged to the jury.[52] That is, the Appellate Division "must consider the elements of the crime, for even if the prosecution's witnesses are credible their testimony must prove the elements of the crime beyond a reasonable doubt."[53]

The primary thrust of Ortiz's argument is that the trial court erroneously admitted the lay testimony of the correctional officer that the substance smelled like urine. Ortiz argues that there was a lack of foundation for the "lay opinion" of the correctional officer. The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[54] "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[55] "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[56]

It has long been New York law that matters of common observation may ordinarily be proved by those who witness them, without resorting to mechanical or scientific tests to verify them with definite precision.[57] Just as "[b]lood stains on garments occur so frequently in the

---

[51] N.Y. Crim. Proc. Law § 470.15; *People v. Bleakley*, 508 N.E.2d at 674–75.

[52] *People v. Johnson*, 890 N.E.2d 877, 879 (N.Y. 2008).

[53] *People v. Danielson*, 880 N.E.2d 1, 5 (N.Y. 2007).

[54] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[55] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998).

[56] *Estelle v. McGuire*, 502 U.S. at 72, quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983).

[57] *People v. Gonzalez*, 35 N.Y. (8 Tiffany) 49, 60-63 (N.Y. 1866) (allowing lay testimony that stains on garments appeared to be blood).

experience of all, from a variety of causes, that they are easily recognized by persons of ordinary observation,"[58] so too is the smell of urine.

The opinion testimony of lay persons is governed in the federal courts by Federal Rule of Evidence 701.[59] Under the federal rule, admission of lay opinion testimony is within the discretion of the trial court.[60] The testimony in question in this case meets the requirements of Rule 701 in that it was: (1) based upon the perception of the witnesses, *i.e.*, one of his senses (smell); (2) helpful to the determination of a fact in issue (the nature of the substance); and (3) not based on scientific, technical, or other specialized knowledge. The distinctive odor of urine clearly falls within the category of being "the product of reasoning processes familiar to the average person in every day life," not "from a process of reasoning which can be mastered only by specialists in the field."[61] As the testimony would be admissible under the federal rule, a rule adopted by the Supreme Court,[62] it cannot logically be said that the decision of the Appellate Division in rejecting Ortiz's position on this issue, was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[63]

The constitutional standard for sufficiency of the evidence as set forth in *Jackson v. Virginia*, is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

---

[58] *Id.* at 62.

[59] The Court notes that proposed New York Evidence Code § 701 is similar to the federal rule. If a witness is not testifying as an expert, the testimony of the witness in the form of opinions or inferences is limited to those opinions or inferences which are difficult to describe in more concrete terms, rationally based on the perception of the witness, and helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue.

[60] *See United States v. Tsekhanovich*, 507 F.3d 127, 129 (2d Cir. 2007).

[61] *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005).

[62] 28 U.S.C. § 2072.

[63] 28 U.S.C. § 2254(d).

reasonable doubt."[64]  This court must, therefore, determine whether the decision of the Appellate Division on the merits unreasonably applied *Jackson*.

Ortiz misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[65]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[66]  This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law.  That such evidence exists is clearly established by the record in this case.  Ortiz bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous; a burden Ortiz has failed to carry.  Here, the Appellate Division, a state court applying both the sufficiency of the evidence standard (first appeal) and the more stringent "weight of the evidence" test (second appeal), found that there was not only sufficient evidence to support conviction of the crimes under state law, but, after re-weighing the evidence and reassessing credibility, that the verdict was not against the weight of the evidence.  Review of those decisions is beyond the purview of this Court in a federal habeas proceeding.

Ortiz is not entitled to relief under his third ground.

Ground 4:  Denial of Error *Coram Nobis* Violated New York Law.

Ortiz asserts that New York law does not permit denial of a motion for a writ of error *coram nobis* without opposition from the prosecution.  This is an issue of state law, which is, as noted above, beyond the purview of this Court in a federal habeas proceeding.

Ortiz is not entitled to relief on his fourth ground.

---

[64] 443 U.S. 307, 319 (1979) (emphasis in the original).

[65] *See Engle v. Isaac, supra*.

[66] *Jackson*, 443 U.S. at 324 n.16.

## V.  CONCLUSION AND ORDER

Ortiz is not entitled to relief on any ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[67]  To the extent the issues raised in the petition were addressed by the Appellate Division, Fourth Department, no reasonable jurist could find that the decision was "objectively unreasonable."  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  See Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court to enter final judgment accordingly.

Dated:  March 27, 2009.

/s/ James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>United States District Judge

---

[67] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).